[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a limited contested action for dissolution of marriage tried to the court in the New Haven Judicial District. The evidence shows that the parties were married on May 31, 1981 in New Haven, Connecticut. Both parties have resided in the state of Connecticut for a substantial period of time, and there is one CT Page 3228 child issue of that marriage, to wit: Aart VanWilgen IV, born July 27, 1986. No other children have been born of this marriage. The marriage of the parties has broken down irretrievably and the other allegations of the complaint are found to have been proven and true.
The plaintiff testified that she met the defendant when she was approximately fifteen or sixteen years of age. He was approximately one year older. They lived together from approximately 1977 or 1978. Early on in their marriage, she was employed at Howard Johnson's. Initially, she worked as a waitress and eventually became the manager of the restaurant on Interstate 95 in Branford. At the time that they started living together, the defendant worked at Atlantic Wire in Branford, Connecticut. Through the course of their marriage, they shared joint bank accounts. It was the parties' custom that the plaintiff would deposit their pay into their account and pay the family bills. Both parties worked throughout the course of the marriage, with the exception of one year after the plaintiff was laid off from Howard Johnson's when that company lost its contract with the State of Connecticut, and after the birth of their child. The plaintiff received unemployment compensation for the period of her lay off.
The child was born to the parties in July of 1986. When the child was born, the decision was made that the plaintiff would stay at home raising the child and she did so from 1986 to approximately 1989. The plaintiff testified that at some point she realized that her relationship with her husband was not as it should be. It was her feeling that too many of the responsibilities of the marriage were hers, including financial responsibilities, the payment of the bills, cleaning, and other functions. She also noticed that there were differences between them. Mrs. VanWilgen testified that she did not speak to him about these observations, and she did not share this information with him at the time. She did however, discuss with him the fact that she had been a victim of a sexual assault when she was younger and that she had reservations about "carrying the ball" for all of the marital responsibilities after the birth of the child.
The parties lived essentially on Mr. VanWilgen's income from the time of the birth of the child until approximately 1989. In 1989, the plaintiff began several different jobs, including a school crossing guard. Eventually, she became the dock master for CT Page 3229 Stony Creek. The parties moved into a multifamily home owned by the plaintiffs parents in order to reduce their rent and eventually they made somewhat of an economic recovery. During that time, the defendant, Mr. VanWilgen became employed at the State of Connecticut, Department of Transportation. He also worked part time at his former employment at Atlantic Wire.
In 1991, there was a conveyance to the plaintiff and the defendant from the plaintiff's parents of a parcel of real estate in Guilford, Connecticut. The conveyance was unusual in that all four parties, that is the parties to this action and the plaintiff's parents are owners of the property together. It is on that property that the plaintiff and the defendant built their home which is described as a prefabricated home approximately twenty-four feet by forty feet. The parties each produced evidence as to the value of the property. The overall value of the property provided by the defendant is $150,000.00. That value, while found to be credible, does not take into account the unusual form of the ownership of the land. The court finds that the value of one half of the land should be deducted from the overall value of the property, the land being 51.5% of the total. Accordingly, the court finds the parties' interest in the property to be $111,375.00. When reduced by the amount of the present mortgage, the equity of the parties is $32,867.00.
In 1992 the plaintiff obtained employment at the Grove School as a security guard. This job entailed working overnight approximately five to six evenings per week. During the time that she was thus employed, the child was watched by Mr. VanWilgen, and the plaintiffs mother. During her employment at the Grove School, the plaintiff met and became involved with another woman. The plaintiff describes that meeting as her first lesbian experience, and despite some trepidations about it because of her traditional and Catholic upbringing, the relation continued and indeed continues to this day. It was that relationship which lead to the breakup of the marriage.
At present, the plaintiff is employed as a police officer for the City of New Haven. She works evenings, working approximately five nights a week from midnight through 8:00 A.M. Her schedule is staggered in that she works five nights on, then has two nights off, followed by five nights on and three nights off. The plaintiff indicates that she likes working in the evenings and at present her lover who now lives with her watches the child during the time that she is at work. The plaintiff's financial affidavit CT Page 3230 shows her assets being limited essentially to the house in Guilford, a motor vehicle with negative equity, very limited savings, and a pension with the New Haven police department. Otherwise the plaintiff is forty-four years of age and is in good health.
The defendant Mr. VanWilgen testified that he is currently forty-six years of age. He has been employed with the State Department of Transportation since 1987, and at present is a "road maintainer, grade 2". There are four grades, which are based on seniority. He has a high school degree, and no further education. He also holds a second job at Atlantic Wire as a mechanic. In the early part of the parties' marriage he had worked at Atlantic Wire on a full time basis, and upon obtaining employment with the State of Connecticut stayed on part time. That job at Atlantic Wire has provided income in varying stages. Currently, the defendant reported that work at Atlantic Wire has slowed considerably, that there had been layoffs, and that he is called in on a sporadic basis. The defendant testified that he has both medical benefits and retirement benefits from the State of Connecticut, and also has limited benefits from Atlantic Wire.
The defendant's testimony was that during the early part of their marriage, he felt abandoned by his wife's long hours and time spent at work at Howard Johnson's Restaurant. He described himself as being supportive of his wife's difficulties, including seeing a psychologist or psychiatrist in Hamden on several occasions. Both parties testified that they enjoyed no sexual relations since approximately 1985. The defendant testified that his wife started sleeping in a back bedroom in the home in 1992. When he asked what was wrong, he did not receive an answer. It is also clear from the defendant's testimony that he did indeed leave the financial responsibilities to his wife. He had very limited knowledge of the financial affairs of the parties during the marriage. He had no knowledge as to what she purchased with the credit cards or what they were used for. He claimed that he never used credit cards. It is also clear from the testimony that Mr. VanWilgen took a passive role towards most things having to do with the household, and with the parties' son. It was the plaintiff who signed him up for activities, frequently without consulting with Mr. VanWilgen. By the same token, the evidence does not indicate that Mr. VanWilgen had any objection to the way things were done in this regard.
The court has considered the provisions of Connecticut General CT Page 3231 Statutes §§ 46b-40, 46b-81, 46b-82. The marriage of the parties is ordered dissolved. Joint legal custody of the minor child is ordered in accordance with the stipulation of the parties dated March 16, 1999, which stipulation is incorporated fully into the terms of this judgment. The defendant is ordered to maintain medical insurance for the benefit of the minor child. Unreimbursed or uninsured medical, dental, psychological, psychiatric, ophthalmological, or orthodontic expenses shall be divided equally between the parties. The defendant shall pay child support in the amount of $113 per week, in accordance with the child support guidelines. In addition, he shall pay the sum of $23 a week toward the fees incurred on behalf of the minor child at the Sylvan Learning Center. In the event that the child is no longer enrolled at the Sylvan Learning Center, the plaintiff shall be obligated to immediately notify the defendant so that the additional payment may cease.
The defendant shall quit claim his right, title and interest to the property known as 40 West Lake Avenue, Guilford, Connecticut to the plaintiff. In turn, the plaintiff shall give the defendant a promissory note in the amount of $15,000.00 payable on demand upon the earliest of the following events: the termination of the defendant's obligation to pay child support (C.G.S. Sec. 46b-84
(b)), the refinancing of the mortgage for any purpose other than the reduction of the present payment of principal and interest. That note shall be secured by a mortgage.
The defendant shall retain his interest in the real estate listed on his financial affidavit in Sutton, Vermont owned with his family. The defendant shall retain his interest in the State of Connecticut pension and the Atlantic Wire pension, both of which are listed on his financial affidavits.
The plaintiff shall retain her interest in the pension from the City of New Haven police department.
The defendant shall retain any and all interest in his claim against the State of Connecticut with respect to his finger.
Each party shall retain their respective bank accounts, brokerage accounts, and credit union accounts free of any interest or claim from the other party. Similarly, these parties shall retain their own motor vehicle, and pay the loan outstanding on said vehicle. CT Page 3232
Each party shall pay their own counsel fees, and be equally responsible for the fees of the attorney for the minor child. The defendant shall pay to the plaintiff the sum of $200 per month for a period of twenty-four months towards the debts of the parties presently due and owing. The wife shall be responsible for payment of the following debts and shall hold the defendant harmless therefrom: First Bank; Chase Visa; First USA Bank; Sunoco Master Card and Radio Shack. The parties shall each pay the liabilities listed on their respective Financial Affidavits except as listed above.
The parties shall retain such personal property as is currently in their possession, and shall retain the personal property specifically listed on each of their financial affidavits. Neither party shall pay or receive alimony.
The orders entered by this judgment are intended to be in the form of spousal support, and accordingly should not be discharged in a bankruptcy proceeding.
Robaina, J. CT Page 3232-a